***********
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act and all claims and notices as required by law were properly and timely filed regarding all parties.
2. An employee-employer relationship existed between the Employee and the Defendant-Employer at all times relevant hereto.
3. American Manufacturers Mutual is the carrier on the risk.
4. On or about September 27, 1999, the Employee, John Edward Dodson, suffered what Plaintiff alleges and deems to be a compensable injury-by-accident arising out of Dodson's employment as a truck driver and resulting in his death on October 4, 1999. Defendants admit that the injury and death occurred, but deny that the injury arose out of his employment.
5. The nature of the injuries suffered by Decedent Dodson was a severe head injury and other injuries more particularly described in the medical records attached to the Pre-Trial Agreement at Tab 8.
6. The decedent, John Edward Dodson, Employee, fell as a result of the interaction between his person and the automobile driven by Troy Wayne Campbell on September 27, 1999 (after he approached the automobile). When Dodson fell to the pavement, he struck his head, his brain was injured, he required hospitalization and brain surgery, and, as a result of that injury, he died on October 4, 1999.
7. Employee's average weekly wage is sufficient to yield the maximum compensation rate in effect for 1999, i.e., $560.00 per week.
8. Plaintiff is claiming medical compensation along with death benefits.
9. The Employee last worked for the Defendant-Employer on September 27, 1999, the date of the alleged injury-by-accident.
10. Exhibits, indexed and attached to the Pre-Trial Agreement under Tabs 1 through 19 were received into evidence without need of further authentication and without prejudice to the right of either party to take the testimony of any of the witnesses identified in said records.
11. Defendant's Responses to Plaintiff's First Set of Interrogatories under Tab 16 were stipulated into evidence and are incorporated herein by reference.
 ***********
Based upon all the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Decedent, John Dodson was born January 21, 1958 and was 41 years old at the time of his death. He had been employed with defendant, Dubose Steel, Incorporated, for approximately 4 ½ years as a truck driver.
2. On September 27, 1999 John Dodson was transporting a tractor-trailer load of steel for his employer into the State of Virginia. Dodson was notified about the load he was carrying on September 24, 1999 by his dispatcher/supervisor, James High. He began work on the morning of September 27, 1999 in Roseboro, North Carolina, proceeded to his first drop at Martinsville Iron Steel Company in Martinsville, Virginia, and then on to Cavalier Steel Company in Lynchburg, Virginia. Dodson was on his way to Banker Steel Company in Lynchburg, Virginia at the time of the incident causing his injury and subsequent death.
3. The tractor trailer truck operated by John Dobson was subject to the rules of the United States Department of Transportation.
4. The road Dodson was traveling immediately prior to his injury was a divided highway with at least two lanes of traffic going in the direction of Dodson's travel. As Dodson was driving his tractor trailer truck, in the course of his employment, he encountered a camper or recreational vehicle ("R.V.") that was on fire, partially blocking his right-hand lane of travel. Dodson and the other traffic in his lane were required to slow down and merge left to avoid the burning recreational vehicle.
5. Troy Campbell was traveling on the same road, in the same direction of travel and at the same time as Dodson, but his vehicle was in the left hand lane at or near the midpoint of Dodson's trailer. When Dodson merged with the traffic into the left-hand lane, Campbell was forced to move further to the left which was a turn lane. Campbell began blowing his horn repeatedly. Dodson merged his truck back into the right lane of travel after he passed the burning RV. The other cars ahead of Dodson that had merged into the left lane did not move back to the right lane. Campbell gave a statement immediately after Dodson's injury wherein he explained what he did immediately after being forced out of his lane by Dodson's vehicle. He stated, "I stayed in the left lane and pulled up beside of him and looked over at him and motioned back and said, `you almost hit me back there.'" Dodson could not hear what Campbell was saying. Campbell made gestures toward Dodson to convey his message. Dodson responded to Campbell's gestures by shaking his finger at Campbell. Campbell then moved his vehicle up a little further, to where other vehicles ahead of him were stopped in traffic at the stoplight.
6. Immediately after the exchange of words and gestures, Campbell and Dodson stopped their vehicles at a traffic signal a short distance down the road with Dodson's vehicle still in the right-hand lane and Campbell's vehicle in the left-hand lane. Dodson got out of his tractor trailer rig with the engine still running and the door left open, and walked around the front of Campbell's truck striking Campbell's hood, but by all eyewitness accounts, doing no damage. Campbell testified that Dodson was signaling or motioning as he stepped in front of Campbell's truck. Campbell could not hear what Dodson was saying. Campbell further testified that Dodson "really didn't have any kind of facial expression". Campbell and several other witnesses were of the impression that Dodson's conduct indicated that Dodson was angry, although no one heard what Dodson said. Campbell believed he might have angered Dodson when he kept "beeping and laying on the horn" at the time Dodson merged into his lane.
7. When Dodson reached the area in the vicinity of the left front headlight of Campbell's vehicle, Campbell turned his wheels to the left and accelerated his vehicle into the left-hand turn lane, striking Dodson.
8. The impact of the blow was variously described from the account by Campbell's friend, Mark Davis, as Campbell's car running over Dodson's foot to Deputy Sheriff Givens' eyewitness account that the impact was such that it lifted Dodson, (who weighed 300 to 400 pounds) up into the air and flipped him, causing him to land on his head. The Commission gives greater weight to the eyewitness account of Deputy Sheriff Givens because Deputy Sheriff Givens was in a vehicle located directly across the intersection from Campbell and Dodson when the incident occurred and had a better view of Dodson being hit by Campbell's vehicle.
9. Dodson was bleeding from the ears, nose and mouth and was unresponsive to communication after landing on the pavement. Dodson was rushed by ambulance to the emergency room at a nearby hospital at which time two brain surgeries were performed to relieve the pressure from a subdural hematoma resulting from the impact which caused his brain to swell. He died seven days later as a result of his injuries from the impact of his head striking the pavement after being struck by Campbell's truck.
10. Campbell's deposition testimony a year or more after the death of Dodson varies significantly from his statements given to Trooper R.E. Keen, the investigating officer. The Commission gives greater weight to Campbell's statements made to Trooper Keen immediately after the incident. Campbell also acknowledges that his statements to Trooper Keen were likely more accurate.
11. The root cause of the confrontation between Dodson and Campbell originated when Dodson, while moving with the traffic, merged into Campbell's lane of traffic forcing Campbell out of his lane. Neither Dodson nor Campbell knew each other prior to this incident. There is no evidence that Dodson intended to force Campbell out of his lane of travel. At the time that the root cause incident occurred, Dodson was driving his truck in the ordinary course of his business for defendant-employer, Dubose Steel, Inc. which was the basic nature of his work as a truck driver. Defendants admit that at the time Dodson was struck by Campbell's vehicle he was an employee of Dubose Steele, Inc.
12. John Dodson's injuries and death resulted from an assault upon his person by a vehicle operated by Troy Campbell. Although there had been gestures and verbal exchanges between Campbell and Dodson (which neither of them could hear), based on the greater weight of the evidence, Dodson did not have a willful intent to injure or kill Campbell when he exited his vehicle and walked toward the driver's side of Campbell's vehicle. Dodson appeared to have acted spontaneously.
13. Trooper R.E. Keen, the investigating officer, testified in detail about the statements made by various witnesses immediately after the September 27, 1999 incident. Greater weight is given to the statements of witnesses interviewed at or near the time of the incident over contrary or inconsistent testimony given more than a year later.
14. Dodson's injury and death arose out of his employment. As a result of his injury and subsequent death, Dodson and now his estate have incurred ambulance and medical bills for treatment for the time that he lived prior to death, as well as burial expenses in excess of $2,000. To date, the bills identified and to be paid are as follows:
Provider Dates of Service Amount
 Lynchburg General September 27, 1999- $46,698.50 Hospital October 4, 1999
 Royal-Hall Funeral October 6, 1999 4,740.00 Home, Inc.
 Ambulance service September 27, 1999 (Amount not known) (name not known)
15. Shelby J. Dodson (widow) is the duly qualified administrator of the estate of John Dodson. At the time of injury and Dodson's subsequent death, she was married to Dodson and residing with him. Dodson was survived by no children.
16. Defendants, through counsel, was notified early on through an interview by telephone with Troy Campbell that the argument which led to Campbell hitting Dodson with his vehicle originated from a driving-related incident between the two which occurred seconds earlier. Even if defendants' did not initially know that the original inciting incident between Campbell and Dodson was rooted in a driving encounter between the two, these facts became known during this litigation.
17. With knowledge of the root cause of the argument being driving-related, defendants continued to defend this claim; however, the Full Commission does not find defendants' defense of this claim to be based upon stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The injury to John Dodson occurring on September 27, 1999 and the resulting death occurring on October 4, 1999 constituted a compensable injury by accident arising out of and in the course of Dodson's employment with Dubose Steel, Inc. N.C. Gen. Stat. §§ 97-2(6); 97-38.
2. John Dodson died as a result of an assault upon his person by a vehicle driven by Troy Campbell. The assault originated from an argument based on the manner in which Dodson drove his truck in the course of his employment. The assault upon Dodson was rooted in and grew out of his employment. Hegler v. Cannon Mills Co., 224 N.C. 669, 31 S.E.2d 918
(1944).
3. Defendant has not proven by the greater weight of the evidence that decedent's injury and subsequent death resulted from his willful intention to injure or kill himself or another, nor have they proven that decedent had a general willful intent to inflict any injury upon Campbell when he exited his truck and approached the vehicle in which Campbell sat. N.C. Gen. Stat. § 97-12(3).
4. Decedent's employment as a long distance truck driver caused him to spend the majority of his working hours traveling on highways and streets. Due to the nature of decedent's work, the risk of driver error causing tempers to flare among strangers on the busy highways was increased. Dodson and Campbell did not know each other so the inciting incident was not due to personal reasons. "Assaults arise out of the employment either if the risk of assault is increased because of the nature or setting of the work, or if the reason for the assault was a quarrel having its origin in the work." A truck driver's risk of being struck by a vehicle is a risk greater than that of the general public. 1 Arthur Larson and Lex K. Larson, Larson's Workers' Compensation, DeskEdition, § 8, Scope (2000).
5. Shelby J. Dodson (wife) is the sole dependent of John Dodson.
6. The Estate of John Dodson is entitled to be paid for the medical and ambulance expenses incurred as a result of Dodson's injury and subsequent death. N.C. Gen. Stat. § 97-25.
7. The sole dependent of John Dodson, Shelby J. Dodson, is entitled to be paid four hundred (400) weeks of compensation beginning from decedent's death plus $2,000 in burial expenses.
8. Defendant's defense of this claim was not unreasonable.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay to Shelby J. Dodson, the sole dependent of John Dodson, four hundred (400) weeks of compensation beginning from October 4, 1999 at the rate of $560.00 weekly plus $2,000.00 in burial expenses. Any accrued amounts shall be paid in a lump sum.
2. Defendants shall pay to decedent's estate all ambulance and medical bills associated with the injuries and death of John Dodson resulting from the compensable event on September 27, 1999.
3. A reasonable attorney's fee in the amount of 25% of the compensation due and owing under this award is hereby approved for plaintiff's. Said attorney's fee shall be paid as follows: 25% of any accrued compensation owed to plaintiff shall be deducted and paid in a lump sum; thereafter, plaintiff's counsel shall receive every fourth check.
4. Defendants shall pay the costs due this Commission.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
BSB:md